[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT


No. 97-1998

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN F. KIVLEHAN,

Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge] 



Before

Boudin, Circuit Judge, 

Aldrich, Senior Circuit Judge, 

and Lynch, Circuit Judge. 



Walter F. McKee with whom Lipman & Katz was on brief for 
appellant.
Margaret D. McGaughey, Assistant United States Attorney, with 
whom Gail F. Malone, Assistant United States Attorney, and Jay P. 
McCloskey, United States Attorney, were on brief for appellee. 



February 27, 1998



ALDRICH, Senior Circuit Judge. Defendant Stephen 

F. Kivlehan, sentenced as an armed career offender pursuant

to U.S.S.G. 4B1.4(b)(3)(A), whose conviction was under 18

U.S.C. 922(g) for, as a felon, being in possession of a

firearm, appeals for evidentiary error; for not, as an

indigent, being provided with funds for a psychiatric

examination prior to sentencing; for the court's refusal to

hold a competency hearing, and for its adding a point to his

offense level for using the firearm in connection with a

crime of violence. We affirm.

Fingerprint Testing 

Defendant was arrested after having alerted his

neighbors by the noise of a vigorous sexual and physical

assault on his wife. After receiving consent to search the

premises, the police found a revolver that defendant's wife

adequately connected with the incident, post. Witnesses at 

trial testified to the uniqueness of the revolver, a

specially built competition pistol, and to having seen

defendant previously with his hands on it. However, it was

returned from testing for prints with none of defendant's

found.

Over defendant's objection, a police detective was

allowed to testify that in his twenty years experience, it

was "very rare" to match positively a known set of prints

with those found on a weapon -- in fact, he could recall no

-3-

case. The objection made was hearsay. This is an

interesting question. The witness was speaking from his own

experience, but the effect, perhaps, was to vouch for the

accuracy of past reports or the testing process itself.

In any event, this whole matter was not

prejudicial. The revolver had a serial number. It was noted

at the time of the arrest; the revolver at the trial had the

same number. Also, four witnesses positively identified it,

including both its prior owner as well as defendant's

brother, a professional gunsmith. Of what consequence the

absence of fingerprints? Given such overwhelming evidence,

any error in admitting the detective's testimony was

harmless. See United States v. Bartelho, 129 F.3d 663, 670 

(1st Cir. 1997). We pass the question whether defendant

himself first "opened the door" to this testimony.

Mental Competency Testing 

There was no claim that defendant was unable to

stand trial, or that he had any mental defect defense.

However, after trial, defendant's counsel asked for funds for

psychiatric testing, pursuant to 18 U.S.C. 3006A(e)(1), and

later moved to determine defendant's competency, pursuant to

18 U.S.C. 4241. His psychological condition, it was

thought, would be relevant to where in the applicable range

he should be sentenced and, also, whether downward departure

under U.S.S.G. 5K2.13 (diminished capacity) could be had.

-4-

Counsel's most tangible basis was the fact that defendant

would not communicate with him and rejected all his mail,

returned unopened. Apart from that were little fragments,

including general comments from defendant's mother and his

probation officer about his apparent, lay-described

"paranoia," and the argument that unless a test was made, how

could it be known that it was not needed?

Whether to authorize funds for psychological

testing is within the trial court's discretion. Cf. United 

States v. Mateos-Sanchez, 864 F.2d 232, 239-40 (1st Cir. 

1988) (investigative expenses). Refusal is not reversible

absent clear and convincing evidence of prejudice to the

accused. See United States v. Canessa, 644 F.2d 61, 64 (1st 

Cir. 1981). A determination of competency may be had when

there is reasonable cause to believe that the defendant, due

to mental defect, is unable to understand the nature and

consequences of the proceedings against him or to assist

properly in his defense. See 18 U.S.C. 4241. To be able 

to assist in one's defense means to have a "sufficient

present ability to consult with [one's] lawyer with a

reasonable degree of rational understanding." United States 

v. Lebron, 76 F.3d 29, 31 (1st Cir.), cert. denied, 116 S. 

Ct. 2537 (1996). Whether to hold a 4241 hearing is a

matter within the trial judge's discretion, reviewable only

-5-

for abuse. See United States v. Morgano, 39 F.3d 1358, 1373 

(7th Cir. 1994), cert. denied, 515 U.S. 1133 (1995). 

Given the posture, all defendant asked for, with

evidence of incompetency, was a favorable exercise of

discretion in sentencing. The court's refusal to pursue the

matter, we think, indicates a disinclination to be any more

favorable than it was. Further, the decision was based, in

part, on observations of defendant's behavior during trial

and sentencing. The record expressly reflects noted

instances of communication between defendant and his counsel

during the latter. We have reviewed the district court's

findings "comprehensively," Lebron, 76 F.3d at 32; read the 

record, and listened to, in effect, testimony from

defendant's trial counsel, and we think the case well summed

up by the court.

If I thought for a minute that a
competency exam or a psychiatric exam
would in any way flush out any problems
that may exist or be determinative of any
issue here, I'd order it, but that's not
the case in the court's humble opinion.
And if I were to order competency exams
on each one of these sentencing
proceedings, there aren't enough
psychiatrists and psychologists to
accommodate all the competency exams. It
is not unusual . . . for defendants, once
they've gone through trial and are facing
sentence, to develop all kinds of
anxieties. . . . [I]t would be strange
if they didn't. And I think that's what
we have here, and I'm not a psychiatrist
or a psychologist, but I'm not going to
delay this matter any further on the
basis of what I have before me now,

-6-

unless someone can convince me that it
would be useful.

And that, coupled with the
defendant's request to get this matter
over with, which is really what he wants
to do I think, that's what I'm going to
do.

We find no abuse or prejudice.

Offense Level 

Finally, defendant complains of the court's

connecting the weapon to the assault. The import of the

alleged error was assigning offense level 34 rather than 33,

making the applicable sentencing range 262-327 months instead

of 235-293. Under U.S.S.G. 4B1.4(b)(3)(A), the greater

figure applies if the firearm was "used or possessed . . . in

connection with a crime of violence." It is acknowledged

that "'in connection with' should be interpreted broadly and

that where a defendant's possession of a firearm aids or

facilitates the commission of another offense, the requisite

link is present." United States v. Thompson, 32 F.3d 1, 7 

(1st Cir. 1994) (footnote omitted).

Reviewing the district court's findings for clear

error, see United States v. Gary, 74 F.3d 304, 317 (1st 

Cir.), cert. denied, 116 S.Ct. 2567 (1996), we find none. 

The defendant had a history of threatening his wife,

sometimes with firearms. During the events precipitating his

arrest, he placed the gun on the floor of the apartment

bedroom, openly visible. He glanced menacingly at the gun

-7-

and then his wife, which she understood to be a threat, as he

attempted to have her facilitate a sexual encounter between

him and another woman. When that failed, he compelled his

wife to endure three hours of sexual and physical abuse, some

of which occurred in the room with the gun. He repeatedly

told her that, in her words, "You probably ain't going to

make it through the night." She said she did not scream or

cry out because she was scared "because there was a loaded

gun right beside the bed." It is no stretch to conclude that

the presence of the gun emboldened the defendant and, in

part, threatened his victim into submission, and therefore

"aid[ed] or facilitat[ed]" the assault. Thompson, 32 F.3d at 

7; cf. United States v. Sturtevant, 62 F.3d 33, 34 (1st Cir. 

1995) (per curiam).

Affirmed. 

-8-