**UNITED STATES of America, Plaintiff,**

**v.**

Andres COLON–MIRANDA (03); Heriberto Ortiz–Santiago (35); Edwin Ortiz–Figueroa (36); David Samuel Martinez–Velez (37); Luis Rosario–Rodriguez (39); Edwin Rosario–Rodriguez (40); Jorge Merced–Morales (45); Rafael Collazo–Aponte (47); Ramon A. Rios–Rios (48), Defendants.

No. Crim. 95–029(JAF).

United States District Court,
D. Puerto Rico.

Feb. 25, 1998.

John M. Katko, Corbin Weiss, Trial Attorneys, U.S. Dept. of Justice, San Juan, PR, Theresa Van Vliet, Chief, Narcotics & Dangerous Drug Section, Criminal Div., U.S. Dept. of Justice, Washington, DC, for U.S.

Luis Guzman–Dupont, San Juan, PR, for Colon–Miranda.

Wilfredo Rios–Mendez, San Juan, PR, for Ortiz–Santiago.

Jorge Arroyo–Alejandro, San Juan, PR, for Ortiz–Figueroa.

Luis A. Medina–Torres, San Juan, PR, for Martinez–Velez.

Miriam Ramos–Grateroles, San Juan, PR, for Luis Rosario–Rodriguez.

Rafael Anglada–Lopez, San Juan, PR, for Edwin Rosario–Rodriguez.

Ludwig Ortiz–Belaval, San Juan, PR, for Merced–Morales.

Manuel San Juan–DeMartino, Julio Morales–Sanchez, San Juan, PR, Collazo–Aponte.

Gustavo A. Del Toro, San Juan, PR, for Rios–Rios.

## MEMORANDUM OPINION

FUSTE, District Judge.

This Order addresses recent difficulties delaying the denouement of this trial of alleged members of drug-trafficking gangs whose activities included several killings and violations of gun laws. 21 U.S.C. §§ 841(a)(1), 848; 18 U.S.C. § 924(c)(1). Twice during Luis Rosario–Rodríguez' presentation of evidence, defense counsel presented or attempted to present witnesses, the verisimilitude of whose direct testimony could not be tested because of the assertion of the Fifth Amendment right against self-incrimination. This Opinion explains the court's concerns and serves as an admonishment that in future occasions the criticized conduct will result in strict sanctions.

### I.

A. *Witness Osvaldo Hurtado*

On Thursday, January 29, 1998, a convicted defendant, Osvaldo Hurtado, testified that in a previous prosecution involving Wes Solano Moreta and two of the defendants in this case, the Rosario–Rodríguez brothers, government witnesses had suggested that Hurtado falsely implicate the Rosario–Rodríguez brothers and other codefendants, "inventing"[1] stories about their criminal activities. Supposedly, federal prosecutors were behind the conspiracy to lie which Hurtado had been invited to join. Hurtado also testified that in the present case, convicted cooperating codefendants David and Wilfredo Martínez–Matta planned to provide false testimony because the prosecution would offer a cooperation agreement to them only if they implicated the Rosario–Rodríguez brothers.

On cross-examination, the prosecution attempted to impeach Hurtado first by noting the coincidence that, in the previous 1996

---

1. Hurtado testified that his understanding of the meaning of the word "inventing" was that when you say you are inventing something, you are adding words to a statement or are saying things that are not true.

trial resulting in the acquittal of the Rosario–Rodríguez brothers and in this case, where they also stand charged, Hurtado had been in the privileged position of having acquired information about two separate intents on the part of government witnesses to give government-sanctioned false testimony regarding the criminal activities of the Rosario–Rodríguez brothers. The witness also testified as to his familiarity with the Wes Solano Moreta organization, to which the Rosario–Rodríguez brothers belonged in the context of the 1996 trial. Moreover, Ms. Miriam Ramos, present counsel for Luis Rosario–Rodríguez, had elicited Hurtado's testimony in this trial as she had participated in eliciting similar testimony involving the conspiracy to lie in the 1996 trial. This line of inquiry raised the issue of the motive behind Hurtado's testimony and his potential bias in favor of his cohorts, the Rosario–Rodríguez brothers. This witness' testimony highlighted the importance of the line of impeachment which the government followed through cross-examination, the precise issue that led to problems in the actual or potential cross-examination of the other two witnesses discussed herein.

## B. *Witness Giovanni Hernández–García*

Later that same day, Ms. Miriam Ramos, representing Luis Rosario–Rodríguez, introduced witness Giovanni Hernández–García. The purpose of calling Hernández–García was to impeach a previously-called prosecution witness, Marcos Hidalgo. Mr. Hernández–García testified fully on direct examination. During the first line of cross-examination, Hernández–García admitted that he had been convicted in the 1996 case where the Rosario–Rodríguez brothers were acquitted, placing him in the same position as Mr. Hurtado in that he had testified and was subject to cross-examination regarding his potential motivation in favor of the Rosario–Rodríguez brothers. The Rosario–Rodríguez brothers were alleged members of the Wes Solano Moreta organization of which he, Hernández–García, also formed a part. The government then inquired whether Hernández–García had representation in the courtroom. He pointed to attorney Gustavo del Toro, who also

represents Ramón Ríos–Ríos, a codefendant in this trial. The prosecutor continued his cross-examination until the witness refused to testify because of his Fifth Amendment right against self-incrimination. At that point, the court admonished both defense counsel del Toro and Ramos for having failed to alert the court to the potential Fifth Amendment claim concerning the witness. Counsel Ramos was the proponent of the testimony, and counsel del Toro his counsel in a pending motion for new trial as a result of the 1996 conviction, both being aware that Hernández–García could not be cross-examined without incriminating himself.

In order to determine whether Hernández–García unequivocally intended to raise his right against self-incrimination, the court held a brief continuation of the cross-examination outside the presence of the jury. With the witness still refusing to answer any questions of substance on cross-examination on the basis of his Fifth Amendment right, it was abundantly clear that Mr. del Toro, counsel for both defendant Ríos–Ríos and witness Hernández–García, had a conflict of interest. MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.7; *see also, In re Grand Jury Proceedings,* 859 F.2d 1021, 1023 n. 3 (1st Cir.1988). Because of this conflict, the court appointed Joseph Laws, Esq., Federal Public Defender, to represent Hernández–García's interests regarding his testimony in this case.

On February 2, because of Hernández–García's having invoked his Fifth Amendment right, the government pointed out the prejudice suffered, but, out of an abundance of caution, did not move to strike his testimony. The witness was, accordingly, excused from further testimony. The court subsequently instructed the jury that the witness had raised his Fifth Amendment right from which no prejudice to either side should flow. Thus, witness Hernández–García's direct testimony was not subjected to the rigors of cross-examination because he claimed his Fifth Amendment right against self-incrimination.

### C. *Witness Richard Rosario–Rodríguez*

Later on February 2, 1998, Ms. Ramos moved to call Richard Rosario–Rodríguez, a severed codefendant in this case who is pending trial, and the brother of codefendants Luis and Edwin Rosario–Rodríguez, to testify that he had an alleged affair with the common-law wife of witness Marcos Hidalgo, in order to discredit Hidalgo's previously-offered testimony. Especially in the context of the previous witnesses, it appeared obvious that Richard Rosario–Rodríguez would later invoke his right of self-incrimination on cross-examination. Consequently, the court explored the testimony of the potential witness outside of the presence of the jury to ascertain whether the witness would raise his Fifth Amendment right and, thus, prevent the government from effectively cross-examining him.

Out of the presence of the jury, Richard Rosario–Rodríguez testified as to the alleged affair with Marcos Hidalgo's common-law wife. The government then posed questions regarding the witness' participation in drug trafficking networks of this case, in order to impeach the witness by showing bias and a personal interest in defending other defendants who are blood relatives. As suspected, and like the witness before him, Richard Rosario–Rodríguez repeatedly invoked his Fifth Amendment right against self-incrimination, and refused to answer any question, from the origin of his nickname to allegations of direct participation with other previous and current defendants in this trial. His refusal to submit to cross-examination would have left his testimony beyond verification, as was the case with the testimony of Giovanni Hernández–García.

## II.

Cross-examination is the cornerstone of the adversarial system, allowing each party to scrutinize closely statements for credibility, bias, and perception. It "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). While the defendant's right to cross-examination is rooted in the Confrontation Clause of the Constitution, in order to be ever vigilant in the search for the truth, the adversarial system provides the government a right to cross-examine defense witnesses. *United States v. Gary*, 74 F.3d 304 (1st Cir.1996); Fed.R.Evid. 611(b).

Despite a defendant's Sixth Amendment right of confrontation, he may not offer testimony that is "inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). "A trial judge may strike a witness' direct testimony if he flatly refuses to answer cross-examination questions related to 'the details of his direct testimony,' thereby undermining the prosecution's ability 'to test the truth of his direct testimony.'" *United States v. Bartelho*, 129 F.3d 663, 673 (1st Cir.1997) (quoting *United States v. Brooks*, 82 F.3d 50, 54 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 267, 136 L.Ed.2d 191 (1996)).

It is well settled that a witness' direct testimony can be stricken if he refuses to subject that testimony from scrutiny by invoking the Fifth Amendment on cross-examination. *United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir.1990); *see also McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) ("[i]t has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination"). To allow a witness to invoke his Fifth Amendment right and shield his direct testimony from scrutiny would constitute "a positive invitation to mutilate the truth." *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir.), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988) (quoting *Brown v. United States*, 356 U.S. 148, 156, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958)). "Just as the trial court must be vigilant in ensuring that a defendant has a full and fair cross-examination, it must similarly safeguard the government's cross-examination 'to prevent co-conspirators from 'whitewashing' each other through the use of testimony unchallengeable for one reason or another.'" *United States v. Gary*, 74 F.3d

304, 310 (1st Cir.1996) (quoting *United States v. Zirpolo,* 704 F.2d 23, 26 (1st Cir.1983)). Therefore, we cannot permit a witness to testify on direct if we have adequate reason to believe that he will invoke the Fifth Amendment on cross-examination regarding questions properly probing his credibility and bias. *See, e.g., United States v. Castro,* 129 F.3d 226, 229 (1st Cir.1997); *United States v. De La Cruz,* 996 F.2d 1307 (1st Cir.), *cert. denied,* 510 U.S. 936, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993) (affirming trial judge's decision not to permit witness to testify where witness refused to answer any of the prosecutor's questions other than his name and address on self-incrimination grounds); *United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir.1990).

### III.

■ Impeachment of a witness on cross-examination involving questions beyond those issues discussed on direct is not a collateral matter and should not be excluded for that reason. *United States v. Smith,* 101 F.3d 202, 213 (1st Cir.1996) (holding that the district court's permitting government cross-examination did not constitute plain error). Therefore, while cross-examination must be limited to matters reasonably related to the subject matter of direct examination, a party may always inquire in cross-examination on issues that cast doubt on the veracity of the testimony. The bias of a witness is an essential element of cross-examination, and the court cannot deprive the jury of crucial information on bias. The court may limit inquiries into bias only after it has been clearly explored. "If the jury has sufficient evidence before it bearing on the witness' bias, '[t]he court need not permit unending excursions into each and every matter touching upon veracity.'" *Niziolek v. Ashe,* 694 F.2d 282, 289 (1982) (quoting *United States v. Fortes,* 619 F.2d 108, 118 (1st Cir.1980)). In this case, no testimony regarding bias was permitted because Hernández–García and Richard Rosario–Rodríguez' assertion of their Fifth Amendment right blocked that avenue of inquiry altogether. The lack of an examination of credibility fosters an undeniable imbalance between the parties, credibility is never irrelevant or beyond the scope of cross-examination. *See, e.g., U.S. v. Park,* 525 F.2d 1279, 1283 (5th Cir.1976) (cross-examination cannot exceed scope of the direct examination but this rule does not apply to examination seeking to explore witness' reliability or credibility). *See also, Wheeler v. United States,* 351 F.2d 946, 947 (1965) (holding that questioning may be extensive regarding the issue of bias).

### IV.

■ The rules of evidence and the foundation of the adversarial justice system demand that parties have the right to test the truth of direct testimony. That impeachment may inquire into matters not directly discussed on direct does not diminish the import of this principle.

■ The fact that this situation arose in the context described here is unacceptable. Because we cannot permit testimony whose truth cannot be verified, counsel may not present a witness who, to their knowledge, may not face cross-examination. If counsel has the most picayune suspicion that a witness may not be able to testify on cross-examination because of a potential for self-incrimination, counsel has a duty to bring this concern to the court. Attorneys Ramos and del Toro's deliberate flouting of these principles is sanctionable and counsel are censured for their role in attempting to sit a witness who they knew could not be cross-examined. Any future attempt to derail the orderly presentation of evidence will not be tolerated, and appropriate sanctions beyond a mere censure will be imposed.

**IT IS SO ORDERED.**