515 S.E.2d 582

STATE of West Virginia ex rel. John G. SIMS, Prosecuting Attorney for Logan County, West Virginia, Petitioner,

v.

Honorable Roger L. PERRY, Judge of the Circuit Court of Logan County, and Tommy Dean Hunt, Respondents.

No. 25629.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 16, 1999.

Decided March 26, 1999.

Kathleen B. Murphy, Chief Assistant Prosecuting Attorney for Logan County, Logan, West Virginia, Attorney for the Petitioner.

Donald C. Wandling, Avis, Witten & Wandling, Logan, West Virginia, Attorney for the Respondent, Tommy Dean Hunt.

DAVIS, Justice:

In this original proceeding in prohibition, the State seeks to prohibit the Circuit Court of Logan County from enforcing its order suppressing incriminating statements made by the defendant, Tommy Dean Hunt [hereinafter "Hunt"], to a confidential police informant regarding activities that had been the subject of earlier criminal charges against Hunt, which charges had been dismissed approximately two years prior to his incriminating statements. Following Hunt's incrimi-

nating statements, he was again charged with criminal offenses identical to those that had previously been dismissed. The circuit court granted Hunt's motion to suppress his statements based upon its findings that the State violated Hunt's Sixth Amendment right to the assistance of counsel and that the State acted in such a way so as to avoid the procedural dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We conclude that Hunt's Sixth Amendment right to the assistance of counsel was not violated as no related judicial proceedings were pending against him at the time of his incriminating statements. Furthermore, we find that no evidence was presented to show that the State acted to avoid *Miranda*. Consequently, the writ of prohibition is granted.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The basic facts underlying this petition are undisputed. In June, 1995, Hunt, defendant below and respondent herein, was charged with two counts of first degree arson, in violation of W. Va.Code § 61-3-1 (1935) (Repl.Vol.1992), and one count of burning or attempting to burn insured property, in violation of W. Va.Code § 61-3-5 (1935) (Repl. Vol.1992), in connection with the destruction of his home by fire. At his arraignment, Hunt indicated that he wished to hire his own attorney and requested a preliminary hearing. Prior to the preliminary hearing, Hunt retained attorney Donald Wandling to represent him with respect to the above-described charges. The preliminary hearing was then held before the Magistrate Court of Logan County on August 17, 1995. At the conclusion of the hearing, the magistrate dismissed the case for lack of sufficient evidence to support the charges. The State objected to the dismissal. The State submits that after the charges against Hunt were dismissed, the investigation remained open but was not actively pursued.

Two years later, in August 1997, law enforcement officers obtained new information connecting Hunt to the burning of his home.[1] Specifically, the officers were informed that David Bumgardner [hereinafter "Bumgardner"] had been hired by Hunt to burn the home. Consequently, the officers enlisted Bumgardner's cooperation to obtain incriminating statements from Hunt. Bumgardner was equipped with a wireless transmitter and dispatched to Hunt's residence. During Bumgardner's visit, Hunt, in fact, made incriminating statements regarding the fire, which were recorded by virtue of the transmitter concealed on Bumgardner. As a result of the incriminating statements, Hunt was again charged with the same offenses that had previously been dismissed. After Hunt's subsequent indictment on those charges, the State sought to use the recording and/or transcript of the conversation between Hunt and Bumgardner in its case-in-chief.

Hunt's counsel filed a motion to suppress evidence of the conversation. Apparently, defense counsel argued that the evidence was taken in violation of Hunt's right to counsel and without his having been advised of his constitutional rights. Hunt evidently argued that his right to counsel had previously attached in 1995 when he had first been charged with the same offenses. Following a hearing on Hunt's motion to suppress, by order entered December 10, 1998, the Circuit Court of Logan County granted the motion. The court's order stated:

> THEREFORE, the Court FINDS that at the time the statement was obtained the defendant was clearly a suspect and had been previously charged. Therefore, the Court FINDS that the statement taken was in such a way so as to avoid Miranda and in violation of the defendant's Sixth Amendment Right to counsel as in *Massiah* and *Brewer* and their progeny.

Thereafter, counsel for the State asked the court to make two additional findings, to which Hunt did not object. Consequently, the court additionally found:

---

1. This information apparently came from Hunt's girlfriend, who had contacted law enforcement officials to report an unrelated offense by Hunt and then volunteered information regarding the fire.

1. That the charges against the defendant were not voluntarily dismissed by the State in an effort to facilitate the taking of the statement and that there is no connection between the dismissal and the statement;

2. That no judicial proceedings of any kind were pending against the defendant at the time the statement was obtained.

After a subsequent hearing in this case, the circuit court, by another order also entered on December 10, 1998, reiterated its ruling on Hunt's motion to suppress and, following factors set forth in *State v. Leadingham*, 190 W.Va. 482, 488–89, 438 S.E.2d 825, 831–32 (1993),[2] concluded:

1. That the State through use of an agent intentionally created a situation likely to induce the defendant to make incriminating statements without assistance of counsel.

2. That the statements related to the offense for which the defendant had been charged and the right to counsel had attached.

3. That the police knowingly circumvented the right to counsel in deliberately elicited [sic] the statements.

4. That the police and the undercover agent took some action beyond mere listening to induce the statements.

The State then filed a petition for writ of prohibition in this Court seeking to prohibit the Circuit Court of Logan County from enforcing its decision suppressing the evidence of Hunt's incriminating statements. We granted a rule to show cause. We now grant the writ of prohibition.

## II.

### STANDARD FOR WRIT OF PROHIBITION

█ It has long been established that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court

has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va.Code,* 53–1–1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977). *Accord* Syl. pt. 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953). The case *sub judice* is a criminal case in which the State seeks to prohibit the circuit judge from enforcing an order suppressing evidence that is critical to the State's case against defendant Hunt. The State does not argue that the trial court was without jurisdiction. Thus, it appears that the State's complaint is that the court exceeded its legitimate powers by entering its order suppressing evidence. In this regard, we have previously held:

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Syl. pt. 5, *State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807 (1992). Consequently, in addition to addressing the substantive issues raised by the parties, we must also consider whether any error that may have been committed by the court was so flagrant that it effectively deprived the State of its right to prosecute this case.

█ Furthermore, because the order sought to be prohibited is one suppressing evidence, in deciding whether the lower court abused its legitimate powers we will apply a *de novo* standard of review to the legal conclusions made by the court and review its factual determinations for clear error. *State v. Honaker,* 193 W.Va. 51, 56, 454 S.E.2d 96,

2. The *Leadingham* Court adopted these factors from *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), to be used by circuit courts in determining whether to suppress "incriminating statements elicited by an undercover informant working for the police from a defendant whose Sixth Amendment right to counsel *has already attached.*" *State v. Leadingham,* 190 W.Va. 482, 488, 438 S.E.2d 825, 831 (1993) (emphasis added).

101 (1994) ("We review *de novo* legal conclusions involved in suppression determinations. The factual determinations involving those legal conclusions are reviewed under the clearly erroneous standard." (citing *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994), and *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994))). With due consideration for the standards set forth above, we proceed to consider the issues raised by the parties.

## III.

## DISCUSSION

The State raises two issues related to the lower court's decision to grant Hunt's motion to suppress. First, the State argues that the circuit court erred in granting Hunt's motion to suppress his incriminating statements on the ground that the State violated his Sixth Amendment right to counsel in obtaining the statements. Next, the State argues that the circuit court erred in concluding that the State obtained Hunt's statements by acting "in such a way so as to avoid Miranda." We address each of these issues in turn.

### A. Sixth Amendment Right to Counsel

■ To support its argument that the circuit court erred in granting Hunt's motion to suppress his incriminating statements on the ground that the State violated his Sixth Amendment right to counsel in obtaining the statements, the State first contends that the defendant should not be allowed to hide behind the Sixth Amendment in an effort to thwart the legitimate investigation of a crime once the charges against him have been dismissed through no fault of the State. The State insists that once criminal charges are dismissed, so long as that dismissal is not facilitated by the State, the defendant is returned to his original pre-arrest/pre-indictment position. As a result, the State argues, law enforcement officers conducting an investigation should be free to use whatever investigative tools would have been available to them had the defendant never been charged.

Noting that the circuit court relied on *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *State v. Leadingham*, 190 W.Va. 482, 438 S.E.2d 825 (1993), in reaching its decision to suppress Hunt's statements, the State next urges that these two cases are distinguishable from the case *sub judice*. The defendants who made statements to undercover agents in both *Massiah* and *Leadingham* had either an indictment or formal charges pending against them at the time of their statements. By contrast, the charges against Hunt had been dismissed two years prior to his inculpatory statements. Thus, at the time Bumgardner elicited Hunt's statements, there were no judicial proceedings pending against Hunt with regard to the activities that were the subject of the discussion between the two men.

Finally, the State notes that *Massiah* and its progeny may be further distinguished from the present case in that the police or the prosecuting attorney knowingly circumvented the defendant's right to counsel. Here, the State did nothing to facilitate the 1995 dismissal of the charges against Hunt. In fact, the State objected to the dismissal. Moreover, when law enforcement officers sent Bumgardner to Hunt's home, they were acting under the good faith and reasonable belief that Hunt was no longer represented by counsel or protected by the Sixth Amendment.

Hunt responds that the general principle that once a criminal defendant's Sixth Amendment right to counsel has attached the state may not initiate an interrogation of the defendant in the absence of the defendant's attorney, either by its own officials or by the use of agents or informants, compels the conclusion that he continued to enjoy the protections afforded by the Sixth Amendment right to counsel with regard to the previously charged offenses, even after those charges were dismissed.

Hunt further argues that, while the general rule is that an accused's right to counsel attaches only when the state initiates formal criminal proceedings against the accused, the United States Supreme Court has recognized that the right to counsel attaches even in the absence of a formal prosecution in certain circumstances "when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession." *Escobedo v. Illinois*, 378 U.S.

478, 492, 84 S.Ct. 1758, 1766, 12 L.Ed.2d 977, 987 (1964).[3]

Finally, Hunt compares the instant proceeding to a Texas case where the court concluded that the defendant was protected by the Sixth Amendment right to the assistance of counsel notwithstanding the fact that charges against him had been dismissed. *State v. Frye*, 897 S.W.2d 324 (Tex.Crim.App. 1995).

We begin our analysis with a brief overview of the Sixth Amendment right to the assistance of counsel. The Sixth Amendment to the Constitution of the United States, which is made applicable to the various states through the Fourteenth Amendment, declares in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The United States Supreme Court has explained the purpose and scope of the Sixth Amendment right to counsel as follows:

> The right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments is indispensable to the fair administration of our adversarial system of criminal justice. Embodying "a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself," *Johnson v. Zerbst*, 304 U.S. 458, 462–463[, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465] (1938), the right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding. Justice Sutherland's oft-quoted explanation in *Powell v. Alabama*, 287 U.S. 45[, 53 S.Ct. 55, 77 L.Ed. 158] (1932), bears repetition here:
>
> > "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left

without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every stage of the proceedings against him." *Id.*, at 68–69[, 53 S.Ct., at 64, 77 L.Ed., at 170] (quoted in *Gideon v. Wainwright*, 372 U.S. 335, 344–345[, 83 S.Ct. 792, 797, 9 L.Ed.2d 799, 805–06] (1963)).

> As indicated in the last sentence of this paragraph, the Court has also recognized that the assistance of counsel cannot be limited to participation in a trial; to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself. Recognizing that the right to the assistance of counsel is shaped by the need for the assistance of counsel, we have found that the right attaches at earlier, "critical" stages in the criminal justice process "where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade*, 388 U.S. 218, 224[, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149, 1156] (1967) (quoted in *United States v. Gouveia*, 467 U.S. 180, 189[, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 155] (1984)).

*Maine v. Moulton*, 474 U.S. 159, 168–70, 106 S.Ct. 477, 483–84, 88 L.Ed.2d 481, 491–92 (1985) (footnote omitted) (additional citations omitted).

■ While the Sixth Amendment right to counsel is not limited to participation in a trial and may be asserted at earlier "critical" stages of the criminal justice process, it is well established that this right generally does not attach prior to the initiation of judicial proceedings by way of formal charges, preliminary hearing, indictment, information, or arraignment. We previously recognized this principle in Syllabus point 1 of *State v. Bowyer*, 181 W.Va. 26, 380 S.E.2d 193 (1989),

---

**3.** *See infra* note 5 for a discussion of *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

wherein we held: "[t]he Sixth Amendment right to counsel attaches at the time judicial proceedings have been initiated against a defendant whether by way of formal charges, preliminary hearing, indictment, information, or arraignment." *See also Davis v. United States*, 512 U.S. 452, 456–57, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362, 369–71 (1994) ("The Sixth Amendment right to counsel attachés *only at the initiation* of adversary criminal proceedings, see *United States v. Gouveia*, 467 U.S. 180, 188[, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146, 154] (1984), and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." (emphasis added));[4] *McNeil v. Wisconsin*, 501 U.S. 171, 177–78, 111 S.Ct. 2204, 2208–09, 115 L.Ed.2d 158, 168 (1991) (explaining that "[t]he purpose of the Sixth Amendment counsel guarantee—and hence the purpose of invoking it—is to 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, *after* 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." (citing *United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 155 (1984))); *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88

L.Ed.2d 481, 492 (1985) (" '[W]hatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer *at or after* the time that judicial proceedings have been initiated against him ....' " (emphasis added) (citing *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, 436 (1977))); *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972) ("In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell v. Alabama*, 287 U.S. 45[, 53 S.Ct. 55, 77 L.Ed. 158 (1932)], it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only *at or after* the time that adversary judicial proceedings have been initiated against him." (emphasis added) (additional citations omitted)).[5]

In this regard, the United States Supreme Court has also explained:

"[G]iven the plain language of the Amendment and its purpose of protecting the unaided layman at critical confrontations with his adversary, our conclusion that the right to counsel attaches at the initiation of adversary judicial criminal proceedings 'is far from a mere

4. However, the Court went on to explain that in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it established that "a suspect subject to *custodial interrogation* has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him [or her] before questioning begins." *Davis v. United States*, 512 U.S. 452, 457, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362, 370 (1994) (emphasis added).

5. In *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the United States Supreme Court appeared to hold that, under certain circumstances, the Sixth Amendment right to counsel may attach prior to the initiation of judicial proceedings; however, subsequent cases clarified that the right addressed in *Escobedo* pertained to the Fifth Amendment rather than the Sixth Amendment. *See Moran v. Burbine*, 475 U.S. 412, 429, 106 S.Ct. 1135, 1145, 89 L.Ed.2d 410, 426 (1986) ("Although *Escobedo* was originally decided as a Sixth Amendment case, 'the Court in retrospect perceived that the "prime purpose" of *Escobedo* was not to vindicate the constitutional right to counsel as such, but, like *Miranda*, "to guarantee full effectuation of the privilege against self-incrimination...." ' " (citation omitted)); *United States v.*

*Gouveia*, 467 U.S. 180, 188 n. 5, 104 S.Ct. 2292, 2297 n. 5, 81 L.Ed.2d 146, 154 n. 5 (1984) ("[W]e have made clear that we required counsel in ... *Escobedo* in order to protect the Fifth Amendment privilege against self-incrimination rather than to vindicate the Sixth Amendment right to counsel." (citations omitted)). While the Supreme Court has thus far never expressly concluded that the Sixth Amendment right to counsel attached prior to the initiation of judicial proceedings, there is a line of cases from lower federal courts indicating that under the proper circumstances the right may attach at an earlier time. *See Roberts v. Maine*, 48 F.3d 1287 (1st Cir.1995); *United States v. Larkin*, 978 F.2d 964 (7th Cir.1992); *United States ex rel. Hall v. Lane*, 804 F.2d 79 (7th Cir.1986). We find these cases to be unpersuasive on this issue for two reasons. First and foremost, the chain of authority upon which these cases ultimately rely culminates in the United States Supreme Court's decision in *Escobedo*. Second, in each of these decisions the court ultimately concluded that the defendant's Sixth Amendment right to counsel *did not* attach prior to the commencement of judicial proceedings.

**632**

formalism.' *Kirby v. Illinois,* 406 U.S., at 689[, 92 S.Ct., at 1882, 32 L.Ed.2d, at 418]. It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" [*United States v. Gouveia,*] 467 U.S. [180,] 189[, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 155].

As a result, the "Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him [or her] and the State." *Maine v. Moulton,* 474 U.S., at 176[, 106 S.Ct., at 487, 88 L.Ed.2d, at 496].

*Michigan v. Jackson,* 475 U.S. 625, 631–32, 106 S.Ct. 1404, 1408, 89 L.Ed.2d 631, 639 (1986).

 One of the "critical" stages prior to trial whereat the right to counsel may be asserted involves investigation techniques utilized by law enforcement officers. Once "judicial proceedings have been initiated against a defendant ... by way of formal charges, preliminary hearing, indictment, information, or arraignment," Syl. pt. 1, *State v. Bowyer,* 181 W.Va. 26, 380 S.E.2d 193, and the defendant has asserted his or her Sixth Amendment right to counsel, "the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation." *Jackson,* 475 U.S. at 632, 106 S.Ct. at 1409, 89 L.Ed.2d at 640.[6] Among the techniques that law enforcement officers may not use after the attachment of the Sixth Amendment right to counsel is the use of an undercover informant to elicit incriminating statements

from the defendant. *See Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246, 250 (holding, in a case where the defendant made incriminating statements to an undercover informant while free on bond, that "the petitioner [defendant] was denied the basic protections of [the Sixth Amendment right to the assistance of counsel] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him *after he had been indicted* and in the absence of his counsel" (emphasis added)).

Although the lower court relied on *Massiah* in deciding to suppress Hunt's incriminating statements, we find *Massiah* is not dispositive of the issue raised in this case. In *Massiah,* the defendant was under indictment at the time federal agents elicited his statements regarding the activities for which he had been indicted. Here, however, the charges against Hunt had been dismissed approximately two years prior to the time he made his incriminating statements to Bumgardner, who was acting as an undercover informant. While it is without question that the Sixth Amendment right to the assistance of counsel attaches at the time judicial proceedings are initiated against a defendant, neither this Court nor the United States Supreme Court have addressed the status of that Sixth Amendment right once judicial proceedings have been terminated through dismissal of the charges. However, at least two courts have addressed cases with factual circumstances similar to those of the case *sub judice. See United States v. Bartelho,* 129 F.3d 663 (1st Cir.1997), *cert. denied, Bartelho v. United States,* —— U.S. ——, 119 S.Ct. 241, 142 L.Ed.2d 198 (1998); *People v. Riggs,* 223 Mich.App. 662, 568 N.W.2d 101 (1997), *cert. denied sub nom., Riggs v. Michi-*

---

**6.** *See also Maine v. Moulton,* 474 U.S. 159, 170–71, 106 S.Ct. 477, 484, 88 L.Ed.2d 481, 492–93 (1985) ("Once the right to counsel has attached and been asserted, the State must of course honor it. This means more than simply that the State cannot prevent the accused from obtaining the assistance of counsel. The Sixth Amendment also imposes on the State an affirmative obligation to respect and preserve the accused's

choice to seek this assistance. We have on several occasions been called upon to clarify the scope of the State's obligation in this regard, and have made clear that, at the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." (footnote omitted)).

gan, —— U.S. ——, 119 S.Ct. 817, 142 L.Ed.2d 676 (1999).

The facts of *Bartelho* indicate that the defendant, Bartelho, had been charged with certain bank robberies; however, upon the government's motion, the charges were subsequently dismissed without prejudice on October 12, 1994. Thereafter, Bartelho was imprisoned after being arrested on other, unrelated charges. In March of 1995, while he was in prison as a result of one or more of the unrelated charges, he made incriminating statements to another inmate, William Yates [hereinafter "Yates"], regarding the bank robberies. Yates subsequently informed FBI agents of Bartelho's statements. Bartelho was then indicted on charges including, *inter alia*, the bank robbery charges that had previously been dismissed. Prior to his trial on the bank robbery charges, Bartelho moved the trial court to suppress evidence of the incriminating statements made to Yates. The trial court denied Bartelho's motion, and he was subsequently convicted. On appeal to the United States Court of Appeals for the First Circuit, Bartelho argued that the trial court erred in admitting the incriminating statements he made to Yates as the statements were elicited in violation of his Sixth Amendment right to counsel.

Although Yates had apparently voluntarily informed law enforcement officials of Bartelho's incriminating statements, and his assistance was not enlisted by law enforcement officials as Bumgardner's was in the present case, the court did not rely on that fact in rendering its decision. Rather, the court observed that when Bartelho made the incriminating statements "he was not then charged with the robberies. The robbery charges, initiated by complaint on July 8, 1994, were dropped in October 1994. Bartelho was incarcerated with and spoke to Yates in March of 1995. The government indicted Bartelho on the same robbery charges again in May of 1995." *Bartelho*, 129 F.3d at 675. After affirming the lower court's conclusion that the government had not "manipulat[ed] the robbery charges to avoid the require-

ments of the Sixth Amendment," the Court of Appeals concluded that the district court properly declined to suppress Bartelho's statements. *Id.*

In a second case that is similar to the case *sub judice*, Toni Riggs [hereinafter "Riggs"] was charged with the first-degree premeditated murder of her husband, who had been shot to death in Detroit, Michigan. *People v. Riggs*, 223 Mich.App. 662, 568 N.W.2d 101. After a preliminary hearing at which Riggs was represented by counsel, the charges were dismissed due to insufficient evidence. The state prosecutor pursued an appeal of the dismissal. During the period after the dismissal of state charges, but while the case was being appealed, Riggs became the subject of an undercover drug investigation being conducted by the United States Drug Enforcement Administration [hereinafter "DEA"].

During the course of their investigation, DEA agents had contact with Detroit law enforcement officers and were made aware that Riggs had been charged with the murder of her husband, that the charges had been dismissed, that the dismissal was being appealed, that Riggs was represented by counsel and that state law enforcement officers were continuing to investigate the death. Also during their drug-related investigation, DEA agents videotaped several meetings they had with Riggs. During one such meeting, Riggs detailed her involvement in her husband's death. After Riggs was arrested on federal drug charges, the videotape containing Riggs' inculpatory statements about her husband's death was shown, in Riggs' presence, to the Detroit police officer who was in charge of the investigation into the death of her husband. The officer was then left alone to interview Riggs, and he obtained an additional statement from her. Thereafter, Riggs was again charged, in part, with the first-degree premeditated murder of her husband.[7] During her subsequent trial on the murder charge, Riggs sought to have the videotape suppressed. The trial court refused, and Riggs was ultimately convicted of

---

7. The prosecutor's appeal of the dismissal of the earlier charges against Riggs was denied by the Michigan Supreme Court.

the murder. On appeal to the Court of Appeals of Michigan, Riggs claimed the admission into evidence of the video tape violated her Sixth Amendment right to the assistance of counsel.

The Court of Appeals of Michigan, after thoroughly examining existing Sixth Amendment case law on this issue, commented that the dispositive facts in the case were "the dismissal of the case against defendant and her dismissal by the district court following the preliminary examination with respect to the initial state charges." *Riggs* at 698, 568 N.W.2d at 116. The court further observed that:

> when the case against a defendant is dismissed and the defendant is discharged, the positions of the state and the defendant are absolutely changed—there is nothing upon which the defendant could be convicted, nor are there charges under which the state could conduct a prosecution.... Thus, for the purpose of the Sixth Amendment, although the state had committed itself to prosecuting defendant, it would appear that the government's adverse position was not solidified where the district court, in discharging defendant on the basis of insufficient evidence, necessarily determined that probable cause did not exist to believe either that the charged offenses had been committed or that defendant had committed them. *See Gouveia, supra,* 467 U.S. at 189[, 104 S.Ct. at 2298, 81 L.Ed.2d at 155]. Moreover, following the dismissal of the charges and the discharge of the defendant on the basis of the district court's determination that the evidence was insufficient for a formal accusation to lie against defendant, it would appear that the defendant was no longer an accused for Sixth Amendment purposes but rather again was only a suspect. See *Jackson, supra.*

*Id.* at 699, 568 N.W.2d at 116.

Furthermore, concluding that the fact that Riggs was represented by counsel at the time of her challenged interrogation was not controlling, the court elaborated:

> "[T]he suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel. The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor. Its purpose, rather, is to assure that in any 'criminal prosecutio[n],' U.S. Const, Am VI, the accused shall not be left to his own devices in facing the ' "prosecutorial forces of organized society." ' "

*Id.* at 703, 568 N.W.2d at 118 (quoting *Moran v. Burbine,* 475 U.S. 412, 430, 106 S.Ct. 1135, 1145–46, 89 L.Ed.2d 410, 427 (1986) (quoting *Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481, 492 (1985) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 418 (1972)))).

Finally, the *Riggs* court concluded:

> [W]here the unique facts of this case fall outside the facts of the *Moulton* line of cases, I conclude that balancing the narrow application of the Sixth Amendment right to counsel and the importance of allowing the authorities to initiate and pursue investigations compels the conclusion that once the case against defendant had been dismissed and she was discharged by the district court her Sixth Amendment right to counsel did not extend indefinitely to [the DEA agent's] questioning of defendant during his separate investigation. Accordingly, ... I would affirm the trial court's ruling that the evidence of defendant's statements did not warrant suppression.

*Riggs* at 704, 568 N.W.2d at 118–19. *See also United States v.. Martinez,* 972 F.2d 1100 (9th Cir.1992) (finding no Sixth Amendment violation where interrogation by federal agents occurred after charges had been dismissed by state court, but before the defendant was charged for same acts by federal authorities); *United States v. Skipworth,* 697 F.2d 281 (10th Cir.1983) (concluding that admission into evidence of tape recording of conversation between defendant and co-defendant who was cooperating with federal authorities, which was made after state charges apparently resulting from same con-

duct that formed basis of subsequent federal charges were dropped but prior to initiation of federal judicial proceedings, did not violate defendant's Sixth Amendment Right to the assistance of counsel).

Although Hunt relies on *State v. Frye,* 897 S.W.2d 324 (Tex.Crim.App.1995), a case in which the appellate court found a Sixth Amendment violation where the defendant was questioned without the presence of his attorney after charges related to the subject of the questioning had been dropped, we find that *Frye* can be distinguished from the case *sub judice.* The *Frye* court specifically relied on the fact that the prosecution sought dismissal of the charges against the defendant for the specific purpose of continuing its investigation.[8] The court commented that "even though the dismissal of the misdemeanor information and complaint altered the positions of the parties, *such dismissal was accomplished specifically for the purpose of conducting a 'continuing investigation including this transaction.'*" *Frye* at 329 (emphasis added). The court further indicated the narrow application of its decision when it stated "[*u*]*nder the unique facts of this case,* we hold that appellee's Sixth Amendment right to counsel remained when the telephone conversations at issue occurred." *Id.* at 329–30 (emphasis added).[9]

▮▮▮ Based upon the purpose of the Sixth Amendment right to the assistance of counsel, namely to "protec[t] the unaided layman at critical confrontations with his expert adversary, the government, *after* the adverse positions of government and defendant have [been] solidified [by the initiation of adversary judicial criminal proceedings] with respect to a particular alleged crime," *McNeil v. Wisconsin,* 501 U.S. 171, 177–78, 111 S.Ct. 2204, 2208–09, 115 L.Ed.2d 158, 168 (1991) (internal quotations and citations omitted), and based upon the persuasive decisions in *United States v. Bartelho* and *People v.*

*Riggs,* we hold that unless a criminal defendant can show that the government has obtained a dismissal of adversarial judicial criminal proceedings against him or her in order to circumvent his or her constitutional rights, once such criminal proceedings have been dismissed, the right to the assistance of counsel granted by the Sixth Amendment to the United States Constitution no longer applies, regardless of whether the defendant is represented by counsel.

Here, the charges against Hunt had been dismissed approximately two years prior to the time law enforcement officials obtained Hunt's incriminating statements. Thus, there were no adversarial judicial criminal proceedings pending against Hunt at that time. Moreover, there is absolutely no evidence that the State obtained the dismissal of the charges against Hunt in a deliberate attempt to circumvent his constitutional rights. On the contrary, after a preliminary hearing and over the State's objection, the Magistrate Court of Logan county dismissed the case for lack of sufficient evidence to support the charges. Because there was no evidence to support the conclusion that the State deliberately attempted to circumvent Hunt's constitutional rights, the circuit court erred by granting Hunt's motion to suppress on Sixth Amendment grounds.

### B. Miranda Rights

In its first order granting Hunt's motion to suppress, the circuit court found, in part, that Hunt's statement was taken "in such a way so as to avoid Miranda." The State argues that the circuit court's conclusion that Hunt's statement was obtained by the use of a confidential informant in an effort to avoid *Miranda* was clearly in error as the defendant was not in custody at the time the statement was given. Until such time as a defendant is subjected to custodial interrogation, *Miranda* rights are not available.

We believe the State has misinterpreted the circuit court's ruling. The State's argu-

---

8. Indeed, the court remarked that "[t]he prosecutor made a notation upon the State's Motion to Dismiss indicating that the ... charges were being dismissed pursuant to a 'continuing investigation including this transaction.'" *State v. Frye,* 897 S.W.2d 324, 325 (Tex.Crim.App.1995).

9. For other cases finding a Sixth Amendment violation when an interrogation occurred between the dismissal of charges and the subsequent initiation of similar charges, but which are factually distinguishable from the case at bar, see *United States v. Valencia,* 541 F.2d 618 (6th Cir. 1976) and *United States v. Marshank,* 777 F.Supp. 1507 (N.D.Cal.1991).

ment would be a proper response if the court had found that the procedural requirement of notifying a defendant of his privilege against self-incrimination before engaging in a custodial interrogation, as established by the landmark case *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), had been *violated*.[10] On the contrary, the court plainly ruled that the method used to elicit Hunt's statements was employed in an effort to circumvent the procedural requirements and *avoid* the necessity of notifying Hunt of his privilege against self-incrimination. Although the State's argument does not accurately address the lower court's ruling, we nevertheless conclude that the circuit court's finding was in error.

We have thoroughly reviewed portions of the record submitted in connection with this petition, the parties' briefs and the circuit court's orders. We find no evidence to support the contention that the State took any action that was calculated to circumvent Hunt's *Miranda* rights. Perhaps there would have been grounds for reaching the conclusion that the State acted to avoid the procedural requirements of *Miranda* if the evidence demonstrated that law enforcement officers had Hunt in custody and then released him for the purpose of using a confi-

dential informant to elicit incriminating statements, or sought to have charges dismissed for this purpose. *Cf. Jacquin v. Stenzil*, 886 F.2d 506, 508 (2d Cir.1989) (observing that "police cannot be allowed to circumvent *Miranda* by conducting an interrogation under the guise of a [sobriety] performance test"); *United States v. Molina–Chacon*, 627 F.Supp. 1253, 1262 (E.D.N.Y. 1986) (commenting in the context of a defendant who had undergone custodial questioning on foreign soil by foreign officials who had cooperated with United States officials in effectuating the arrest of the defendant that "if United States authorities participated in the interrogation in order to utilize foreign officials as their agents to circumvent the requirements of *Miranda*, the statements obtained will be suppressed" (citations omitted)). However, such facts simply are not borne out in the evidence of the State's conduct in this case. Consequently, we find that the circuit court erred in granting Hunt's motion to suppress his incriminating statements based on the court's determination that the State acted to avoid *Miranda*.[11]

## IV.

## CONCLUSION

For the foregoing reasons, we conclude that the Circuit Court of Logan County

---

**10.** *See State v. Potter*, 197 W.Va. 734, 738 n. 4, 478 S.E.2d 742, 746 n. 4 (1996) (explaining that "In *Miranda v. Arizona*, 384 U.S. 436, 444–45, 478–79, 86 S.Ct. 1602, 1612, 1630, 16 L.Ed.2d 694, 706–07, 726 (1966), the United States Supreme Court held that law enforcement officers must inform suspects of the privilege against self-incrimination prior to initiating custodial interrogation. The Supreme Court announced that a suspect ' "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." ' 384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.").

**11.** Hunt does not directly respond to the State's *Miranda* argument. Instead, Hunt argues that his due process rights under the Fourteenth Amendment of the United States Constitution and Article III, Section 10 of the West Virginia Constitution were violated by virtue of the "interrogation" by Bumgardner. Hunt submits that this Court has recognized that " ' "substantive due process" prevents the government from engaging in conduct that "shocks the conscience,"

... or interferes with rights "implicit in the concept of ordered liberty." ' " *State v. Leadingham*, 190 W.Va. 482, 490, 438 S.E.2d 825, 833 (1993) (footnote omitted) (citations omitted). Hunt argues that in this case the State acted outrageously and thereby violated the fundamental fairness components of the State and Federal Due Process Clauses by using a confidential informant to gather information about charges for which the State knew Hunt had retained counsel. In other words, Hunt contends that the mere fact that he once retained an attorney in relation to his alleged unlawful activities entitles him to certain constitutional protections. In this case, however, we need not resolve that question because there has been no evidence presented to indicate that the State knew that counsel still represented Hunt at the time of the investigation at issue, which occurred two years after the charges against Hunt had been dismissed. By declining to address this issue, we in no way imply an inclination to accept or reject Hunt's argument had supporting evidence been available. We simply need not reach the issue in this particular instance.

abused its legitimate powers and effectively deprived the State of its right to prosecute this case when it granted Hunt's motion to suppress his incriminating statements, which statements are critical to the State's case against Hunt. Consequently, the writ of prohibition is granted.

Writ granted.