633 S.E.2d 278

**STATE of West Virginia ex rel. Blackhawk Enterprises, Inc. and William Gardner, Petitioners**

**v.**

**The Honorable Louis H. BLOOM, Judge of the Circuit Court of Kanawha County, and Eric Gardner and Jodi Gardner Respondents.**

**No. 33050.**

Supreme Court of Appeals of West Virginia.

Submitted June 7, 2006.

Decided June 16, 2006.

daughters, and that he was "actually paying the premium."

Rick Holroyd, Esq., Holroyd & Yost, Charleston, Attorney for Petitioners.

J. Mark Adkins, Esq., Bowles Rice McDavid Graff & Love, Charleston, Attorney for Respondents.

PER CURIAM:

This proceeding involves a request for a writ of prohibition under the original jurisdiction of this Court. The petitioners, Blackhawk Enterprises, Inc. and William Gardner, filed an original jurisdiction writ of prohibition with this Court to prohibit the enforcement of the circuit court's ruling denying their motion to disqualify attorney Eric Calvert, and his law firm of Bowles Rice McDavid Graff & Love, PLLC, from representing the respondents, Eric Gardner and Jodi Gardner, in the underlying civil action wherein the respondents seek the dissolution of Blackhawk because of alleged waste and conversion of corporate assets by petitioner William Gardner. During a hearing on December 16, 2005, the Circuit Court of Kanawha County denied the petitioners' motion to disqualify the respondents' counsel. The petitioners now seek a writ of prohibition from this Court to disqualify the respondents' counsel. Based upon the parties' briefs and arguments in this proceeding as well as the pertinent authorities, the writ is hereby denied.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On March 2, 2006, the petitioners, Blackhawk Enterprises, Inc. and William H. Gardner, Jr., filed an original jurisdiction petition for a writ of prohibition with this Court to prohibit the Circuit Court of Kanawha County from enforcing its order denying the petitioners' motion for disqualification of the respondents' counsel Eric Calvert, and his law firm of Bowles Rice McDavid Graff & Love, PLLC (hereinafter, "Bowles Rice"), from representing the respondents, Eric Gardner and Jodi Gardner, in the underlying civil action, *Eric Gardner and Jodi Gardner v.*

*Blackhawk Enterprises, Inc., and William H. Gardner, Jr., Individually,* Civil Action No. 04–C–2417, which is pending in the Circuit Court of Kanawha County. In that suit, the respondents seek the dissolution of Blackhawk because of the alleged waste and conversion of corporate assets by petitioner William Gardner. This Court issued a Rule to Show Cause on March 15, 2006, directing the respondents to show cause why a writ of prohibition should not be awarded against the Honorable Louis H. Bloom as requested by the petitioners.

Blackhawk was incorporated in March 2003 for the purpose of owning and operating a restaurant and bar named JD's Pilot House Restaurant located in Belle, West Virginia. Initially, William Gardner and Jeff Gunter were co-owners of Blackhawk. In December 2003, Mr. Gunter agreed to sell his forty-nine percent ownership of Blackhawk to the respondents, Eric Gardner and Jodi Gardner, for $50,000. Neither Eric nor Jodi Gardner are related to petitioner William Gardner.

Soon thereafter, since no formal stock had previously been issued between William Gardner and Jeff Gunter, Eric Calvert, an attorney with Bowles Rice, prepared the necessary documents allowing for Mr. Gunter's interest to be transferred to William Gardner, who in turn, transferred forty-nine percent interest to the respondents. On January 16, 2004, the stock purchase agreement was executed in Mr. Calvert's law office wherein all parties were present. In addition to the issuance of the stock and the stock purchase agreement, the corporate by-laws, which were also drafted by Mr. Calvert's law office, were signed by the parties. In the course of drafting and preparing these documents, Mr. Calvert specifically informed petitioner Gardner that he was acting solely on behalf of the respondents. He further advised petitioner Gardner that he should retain separate counsel to consult with and/or assist him in any matters pertaining to his interest in Blackhawk and the signing of any legal documents. Petitioner Gardner did not retain counsel.

Later that evening, following the execution of the relevant legal documents, petitioner William Gardner as well as both of the re-

spondents gathered at their restaurant to celebrate their new business relationship. At some point during the evening, the respondents became involved in a physical altercation which resulted in a domestic battery charge being filed against respondent Eric Gardner. A battery charge was also filed against him for striking the restaurant's manager, Rita Durham. Respondent Gardner pled no contest to those charges. From that point forward, the relations between the respondents and petitioner William Gardner remained strained. Soon after the altercation, in January 2004, the respondents requested to have their interest in Blackhawk bought out by petitioner Gardner. According to petitioner Gardner, Mr. Calvert attempted to negotiate the buyout with him in July and August of 2004 to no avail.

In May 2004, petitioner Gardner attempted to contact the respondents to advise them that they needed to be fingerprinted and have background checks completed in order for Blackhawk to renew its various licenses with the state such as its lottery terminal and alcohol and beverage licences. The background checks were required of all of Blackhawk's owners which included the respondents as well as petitioner Gardner. Respondent Eric Gardner explained to petitioner William Gardner that he would need to contact his attorney, Mr. Calvert, to discuss the matter with him. When neither of the respondents cooperated with the required background checks, petitioner William Gardner formed a new business in his name only called Dover Enterprises, L.L.C. for the purpose of obtaining and making sure the restaurant could continue to hold the required licenses.

On August 31, 2004, the respondents filed a civil complaint in the circuit court seeking dissolution of Blackhawk due to the alleged oppressive and illegal conduct by petitioner Gardner. On October 4, 2004, the petitioners filed an answer and a counterclaim against the respondents alleging they failed to repay their share of a personal loan made to Blackhawk. Numerous other pleadings were filed by both parties leading up to the November 30, 2005, filing of their pre-trial memorandums with the circuit court. On December 8,

2005, the petitioners' motion for summary judgment was denied and on December 14, 2005, the petitioners filed a motion to disqualify Mr. Calvert as counsel for the respondents. During a hearing on December 16, 2005, in a decision from the bench, the circuit court denied the petitioners' motion to disqualify respondents' counsel. Thereafter, the present petition for a writ of prohibition was filed in this Court.

## II.

## STANDARD FOR ISSUING A WRIT

A writ of "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In order to determine whether the writ of prohibition should be granted we apply the following standard of review:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). When considering the issuance of a writ of prohibition arising from a circuit court's ruling on a motion for disqualification, this Court has consistently found the same to be an appropriate method of challenge. *See State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 296, 430 S.E.2d 569, 575 (1993); *State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 311, 557 S.E.2d 361, 365 (2001); *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W.Va. 587, 589, 482 S.E.2d 204, 206 (1996) (per curiam). The rationale for such a finding was succinctly set forth in Ogden Newspapers, wherein we stated:

> The reason that a writ of prohibition is available in this Court to review a motion to disqualify a lawyer is manifest. If a party whose lawyer has been disqualified is forced to wait until after the final order to appeal, and then is successful on appeal, a retrial with the party's formerly disqualified counsel would result in a duplication of efforts, thereby imposing undue costs and delay. *See State ex rel. DeFrances v. Bedell*, 191 W.Va. at 516, 446 S.E.2d at 909.

> Conversely, if a party who is unsuccessful in its motion to disqualify is forced to wait until after the trial to appeal, and then is successful on appeal, not only is that party exposed to undue costs and delay, but by the end of the first trial, the confidential information the party sought to protect may be disclosed to the opposing party or made a part of the record. Even if the opposing party obtained new counsel, irreparable harm would have already been done to the former client. The harm that would be done to the client if it were not allowed to challenge the decision by the exercise of original jurisdiction in this Court through a writ of prohibition would effectively emasculate any other remedy.

*State ex rel. Ogden Newspapers, Inc.*, 198 W.Va. at 589–590, 482 S.E.2d at 206–207. Moreover, as we found in Syllabus Point 2, *State ex rel. Taylor Associates v. Nuzum*, 175 W.Va. 19, 330 S.E.2d 677 (1985), "Under the Code of Professional Responsibility, a lawyer may be disqualified from participating in a pending case if his continued representa-

tion would give rise to an apparent conflict of interest or appearance of impropriety based upon that lawyer's confidential relationship with an opposing party."

## III.

### DISCUSSION

■ The petitioners argue that Mr. Calvert and the law firm of Bowles Rice should be disqualified from representing the respondents in this matter because of his previous representation of the petitioners. The petitioners contend that since Mr. Calvert drafted Blackhawk's bylaws, the stock purchase agreements, and other legal documents there is a conflict of interest in violation of Rule 1.9 of the Rules of Professional Conduct, which provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

■ The petitioners rely upon Syllabus Points, 2, 3, and 4 of *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993), which hold:

2. Rule 1.9(a) of the Rules of Professional Conduct, precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interests of the former client unless the former client consents after consultation.

3. Under Rule 1.9(a) of the Rules of Professional Conduct, determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations.

4. Once a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed.

Specifically, the petitioners argue that in consideration of the underlying facts, circumstances, and legal issues, and in light of the presumption set forth by Syllabus Point 4 of *Hamilton*, that "the former client ... divulged confidential information," this Court must disqualify Mr. Calvert from further representing the respondents in this matter.

Conversely, the respondents contend that an attorney-client relationship never existed between Mr. Calvert and the petitioners. The respondents acknowledge that Mr. Calvert drafted Blackhawk's bylaws, drafted the relative stock purchase agreement and related documents, and issued the respective Blackhawk stock certificates, but they declare that he did so at their sole request, and in their sole interest. Thus, the respondents maintain that absolutely no action was taken by Mr. Calvert on behalf of the petitioners.

■ Additionally, the respondents assert that there was no written, verbal or implied agreement for representation, nor any payment for services between Mr. Calvert, Bowles Rice, petitioner Blackhawk, or petitioner William Gardner. The respondents point out that "[t]he relationship of attorney and client is a matter of contract, expressed or implied." *State ex. rel. DeFrances v. Bedell*, 191 W.Va. 513, 517, 446 S.E.2d 906, 910 (1994). To this end, the respondents state that each time petitioner Gardner was present while Mr. Calvert was discussing any of the legal documents at issue, Mr. Calvert specifically informed him that he was not representing him in any manner. Likewise, the respondents claim that each time Mr. Calvert met with or had any substantive conversation with petitioner William Gardner, that he recommended that both he and Blackhawk retain their own counsel with respect to the numerous business transactions he was conducting on behalf of the respondents.

The respondents also contend that the petitioners' motion to disqualify Mr. Calvert was untimely in that it was filed five days prior to the December 19, 2006, trial date. They maintain that when faced with a motion to disqualify, this Court has noted that such an objection "should be viewed with caution, however, for it can be misused as a technique for harassment." *Garlow v. Zakaib,* 186 W.Va. 457, 461, 413 S.E.2d 112, S.E.2d 112, 116 (1991). In the case at hand, the respondents explain that the petitioners knew Mr. Calvert was representing them in the underlying civil action since August of 2004 and that it was unreasonable for the petitioners to wait until five days prior to the December 19, 2005, trial to file a motion to disqualify Mr. Calvert as their counsel. Moreover, the respondents believe the purpose of the petitioners' motion was to create unnecessary delay and cause the respondents to endure unnecessary and duplicative legal fees.

■ We have previously held that, " '[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code, 53–1–1.' Syllabus Point 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syllabus Point 1, *State ex rel. Sims v. Perry,* 204 W.Va. 625, 515 S.E.2d 582 (1999). Likewise, a writ of prohibition is an appropriate remedy in cases where the lower court has no "jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W.Va. Code § 53–1–1 (1923). Moreover, "[w]here prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue." Syllabus Point 2, *Woodall v. Laurita,* 156 W.Va. 707, 195 S.E.2d 717 (1973).

■ In the instant matter, the circuit court has jurisdiction, therefore we look to Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979):

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Further, in Syllabus Point 2 of *State ex rel. State Road Commission v. Taylor,* 151 W.Va. 535, 153 S.E.2d 531 (1967), this Court provided: "Although a court has jurisdiction of the subject matter in controversy and of the parties, if it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question a writ of prohibition will lie to prevent such abuse of power."

In this case, having considered the underlying facts, and prior rulings of this Court, we believe that a writ should not be granted to prohibit the Circuit Court of Kanawha County from enforcing its order denying the petitioners' motion for disqualification of the respondents' counsel, Eric Calvert, and his law firm of Bowles Rice from representing the respondents in the underlying civil action. It is undisputed that Mr. Calvert was employed by the respondents to protect their sole interests throughout the numerous transactions surrounding their business relationship with the petitioner. In fact, even in the petitioners' "Verified Petition For Writ Of Prohibition" filed with this Court, the petitioners specifically refer to Mr. Calvert as the respondents' attorney. With this in mind, and given Mr. Calvert's express statements to petitioner Gardner that he was not representing him in any way, and that he

needed to obtain his own legal counsel, we believe that Mr. Calvert made his involvement perfectly clear to all parties with regard to the fact that he was acting solely on behalf of the respondents.

In addition, Mr. Calvert's representation of the respondents was not an issue during this time period and did not become an issue until December 14, 2005, even though the parties had been involved in the underlying litigation since August 31, 2004. In fact, at no time during the nearly year-and-a-half of legal pleadings being filed by both parties did the petitioners even hint that they had a problem with Mr. Calvert's representation of the respondents or that they in any way perceived such representation to be a conflict of interest in the underlying civil action.

For instance, the record before us shows that following the filing of the August 31, 2004, civil complaint by the respondents seeking dissolution of Blackhawk, the petitioners timely filed their October 4, 2004, answer to the complaint and included a counterclaim against the respondents. Thereafter, on December 2, 2004, the respondents filed a "Motion to Withdraw Motion to Stike Answer and Counterclaims of [Petitioner] Blackhawk." On March 11, 2005, a scheduling order was entered by the circuit court and on April 14, 2005, the respondents filed a "Motion for Leave to file Amended Complaint, Motion for Pre–Judgment Attachment and Affidavit in Support of Pre–Judgment Attachment." An agreed order was entered on June 10, 2005, granting leave to amend the respondents' complaint to which the petitioners filed their answer on July 13, 2005. On November 30, 2005, both the petitioners and respondents filed their pre-trial memorandums with the circuit court. On December 1, 2005, the respondents filed a motion to exclude evidence regarding the January 16, 2004, incident which occurred at JD's Pilot House, to which the petitioners filed a December 2, 2005, motion in opposition to the respondents' request. On December 8, 2005, the circuit court denied the petitioners' motion for summary judgment, and on December 14, 2005, for the first time in the underlying civil action, the petitioners filed their "Motion to Disqualify Counsel."

■■ In *Garlow v. Zakaib*, 186 W.Va. 457, 461, 413 S.E.2d 112, 116 (1991), this Court held that the concern of misusing the disqualification of counsel as a technique of harassment should be taken into consideration because,

> [D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing.... [Such] motions should be viewed with extreme caution for they can be misused as techniques of harassment.

(Citations omitted.) Moreover, in Syllabus Point 1 of *Garlow*, we held:

> A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.

We believe that Mr. Calvert clearly provided legal services solely on behalf of the respondents and not on behalf of the petitioners and therefore he should be permitted to continue to represent the respondents in this matter. Petitioner Gardner was advised to obtain legal counsel by Mr. Calvert and chose not to do so. We also view the petitioners' motion to disqualify Mr. Calvert with skepticism given the fact that they waited nearly a-year-and-a-half after the litigation began and just five days prior to trial to express their concerns with Mr. Calvert. Moreover, even if we ignore the fact that the petitioners' request to disqualify Mr. Calvert was unreasonably late and without any explanation for its year-and-a-half delay, the petitioners still have not presented this Court with any evidence to justify Mr. Calvert's removal as counsel in the underlying civil

action. Consequently, we deny the petitioners' request for a writ of prohibition and find that the Circuit Court of Kanawha County correctly ruled that Mr. Calvert and Bowles Rice could continue to represent the respondents in this matter.

## IV.

## CONCLUSION

Based upon the foregoing, we deny the petitioners' request for a writ of prohibition.

Writ Denied.